UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF COLUMBIA

| | |
|---|---|
| YOSILA GODINEZ<br>    6839 Winchester<br>    Kansas City, MO 64133<br><br>OSCAR VELASQUEZ ESTEBAN<br>    1707 Gillespie Pl.<br>    Kansas City, MO 64106<br><br>N.V.E. a minor, by his parent and next friend OSCAR OMAR VELASQUEZ<br>    1707 Gillespie Pl.<br>    Kansas City, MO 64106<br><br>                    *Plaintiffs*,<br><br>    v.<br><br>U.S. DEPARTMENT OF HOMELAND SECURITY<br>    Office of the General Counsel<br>    U.S. Department of Homeland Security<br>    2707 Martin Luther King Jr. Ave SE<br>    Washington, DC 20528-0485<br>    *OGC@hq.dhs.gov*<br><br>U.S. CITIZENSHIP AND IMMIGRATION SERVICES<br>    USCIS, Office of the Chief Counsel<br>    20 Massachusetts Ave. NW, Room 4210<br>    Washington, DC 20529<br>    *uscis.serviceofprocess@uscis.dhs.gov*<br><br>                    *Defendants*. | **CIVIL COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF UNDER THE ADMINISTRATIVE PROCEDURE ACT**<br><br>Case No. 1:20-cv-1833 |

Plaintiffs, by and through their *pro bono* counsel, hereby allege as follows:

**<u>INTRODUCTION</u>**

1.      Children should be protected and given an opportunity to thrive. This, Congress understood. For some children who escape abuse, neglect and abandonment, Congress, through the immigration laws, provided needed protection from further harm.

1

Unlike other forms of immigration relief, the Special Immigrant Juvenile Status ("SIJS") laws allow a state court judge to first make specific findings about the reasons why the child is in the U.S., the harm they have suffered and whether their return to their home countries is in the child's best interest. *See* 8 U.S.C. § 1101(a)(27)(J). Based on these findings, the immigration laws provide the child the ability to self-petition for an immigrant visa by filing a Form I-360 with U.S. Citizenship & Immigration Services ("USCIS").

2. Moreover, in order to expedite the SIJS process, the William Wilberforce Trafficking Victims Protection Reauthorization Act ("TVPRA") of 2008 amended the Immigration and Nationality Act ("INA") to require USCIS to adjudicate SIJS petitions within 180 days of filing. TVPRA Pub. L. No. 110-457, 122 Stat. 5044 (2008). Once approved, the law considers the noncitizen to be have been "paroled". *See* 8 U.S.C. § 1255(h); *see also Garcia v. Holder*, 659 F. 3d. 1261 (9th Cir.) (recognizing that "Garcia was 'deemed ... to have been paroled' under § 1255(h)(1)" and recognizing that those with approved SIJS Petitions are "SIJS-parolees"). SIJS-parolees remain in such status until they can apply to change it to that of a lawful permanent resident ("LPR"), using a Form I-485. *See* 8 U.S.C. § 1255(h). Thus, SIJS-parolees are able to indefinitely reside safely and securely in the United States. *See* 8 U.S.C. § 1101(a)(20); *see also Garcia v. Holder*, 659 F.3d 1261, 1271 (9th Cir. 2011) (the SIJS provisions "show a congressional intent to assist a limited group of abused children to remain safely in the country with a means to apply for LPR status").

3. For many, the path from a SIJS-parolee to that of an LPR is efficient. Because there are no issues with visa availability, they can file their adjustment applications either concurrently with their I-360 Petitions or shortly after approval of it. As part of this process, they are also able to file for an interim employment authorization document

("EAD"). The EAD allows the noncitizen to obtain a driver's license, social security card and engage in lawful employment. For these children, it also allows them to continue their educations beyond high school since many colleges require a social security number and proof of lawful presence in the U.S. to be able to enroll.

4. However, like many other immigration processes in the U.S., when it comes to visa availability for those children from the Northern Triangle (El Salvador, Honduras or Guatemala) or Mexico, the process is backlogged by many years. SIJS-parolee children from one of these regions are fated to wait years before they can file their adjustment applications[1].

5. To make matters worse, even though the regulations allow parolees to obtain an EAD, USCIS arbitrarily refuses to recognize SIJS grantees as parolees when they request EADs. *See* 8 C.F.R §274a.12(c)(11); 8 C.F.R. §212.5. USCIS's determinations lack uniformity and while they sometimes properly classify these children as SIJS-parolees eligible for EADs, their determinations fail to be consistent even when it involves the same individual. In at least two known cases, USCIS initially approved an EAD application for an SIJS-parolee child under classification C-11 for public interest parolees. USCIS then denied the renewal for the same individuals, claiming they were not parolees and thus ineligible for EADs. *See Matter of A.M.C.*, A#XXXXXX452 (initial EAD approval dated 6/23/2017, renewal denied 10/2/18) and *Matter of A.L.C.*, A# XXXXXX692 (initial EAD approval dated 01/16/2018, renewal denied 01/22/2020). Based on their incorrect legal determinations, USCIS routinely denies the EAD filed by SIJS-parolee children who are awaiting visa availability.

---

[1] https://travel.state.gov/content/travel/en/legal/visa-law0/visa-bulletin/2020/visa-bulletin-for-june-2020.html

They do this despite these children submitting the required forms and fees consistent with the directions provided by USCIS[2]. The result of USCIS's arbitrary and unlawful actions is that SIJS-parolee children from the Northern triangle remain in a state of limbo, unable to work or continue their education.

6.    Plaintiffs Yosila Godinez, Oscar Velasquez Esteban, and N.V.E. (collectively "Plaintiffs"), bring this action to prevent the wrongful denial of their EAD applications due to USCIS's failure to properly classify them as a SIJS-parolee child. Despite the plain language of the statute, USCIS refused to recognize these individuals as SIJS-parolees, resulting in their inability to obtain their EADs, and thus preventing them from seeking employment or continuing their educations. USCIS's actions are arbitrary and capricious and contrary to law. Plaintiffs ask this court to declare USCIS's failure to recognize them as SIJS-parolees who are eligible for employment authorization, as arbitrary and capricious, an abuse of discretion, and not in accordance with law and thus in violation of the Administrative Procedure Act ("APA"). Plaintiffs seek an order that USCIS reopen Plaintiffs' wrongfully denied EAD applications and adjudicate them in compliance with law.

## JURISDICTION AND VENUE

7.    This case arises under 8 U.S.C. § 1101, *et. seq.*, and the APA, 5 U.S.C. § 701, *et. seq.* This Court has jurisdiction pursuant to 28 U.S.C. § 1331 as a civil action arising under the laws of the United States. This Court also has the authority to grant declaratory relief under 28 U.S.C. §§ 2201-02, and injunctive relief under 5 U.S.C. § 702 and 28 U.S.C. §§ 1361-62. The United States has waived sovereign immunity under 5 U.S.C. § 702.

8.    This Court is not deprived of jurisdiction by 8 U.S.C. §1252, INA §242. *See*,

---

[2] https://www.uscis.gov/sites/default/files/files/form/i-765instr.pdf

*e.g.*, *Zadvydas v. Davis*, 533 U.S. 678, 688 (2001) (finding that INA §242 does not bar a claim challenging agency authority that does not implicate discretion). Likewise, since the present action is not an action to review a removal order but an action challenging the Defendants' unlawful denial of Plaintiffs' applications, it is not barred by 8 U.S.C. §1252(a)(5). *See Department of Homeland Security, et al v. Regents of the University of California et al*, 591 U.S. \_\_\_\_ (2020).

9. Venue is proper pursuant to 28 U.S.C. § 1391(e)(1), which provides, *inter alia*, that a suit against federal officials acting in their official capacities can be brought in any judicial district where substantial events or omissions giving rise to the claims took place. Defendants are agencies of the United States or officers or employees thereof acting in their official capacity or under color of legal authority and all maintain offices within this district.

10. This Court has personal jurisdiction over the Defendants pursuant to 28 U.S.C. § 1391(e)(1), because Defendants are agencies and officers of the United States.

## EXHAUSTION

11. No exhaustion-of-remedy requirement applies to the Plaintiffs' complaint. *See Darby v. Cisneros*, 509 U.S. 137 (1993).

## PARTIES

**Plaintiffs:**

12. Plaintiff, Yosila Godinez ("Yosila") was born in June 1999, is a citizen and national of Guatemala, and entered the U.S. when she was 16 years old; she is currently 21 years old. Prior to coming to the United States, Yosila lived with her biological mother, who refused to provide for her financially, physically, or emotionally. Yosila's natural mother

failed to ensure her well-being and safety by failing to provide food, clothing or shelter. Ultimately, Yosila's mother abandoned her and has not had contact with her for over a decade. Hoping to reunite with her father, Yosila, at the time just a teenager, made the long and dangerous journey to the U.S. alone. Once here, Yosila's father sought and was granted sole custody of his daughter. As part of the custody order, the state court Judge specifically determined that Yosila had been abandoned by her biological mother and that it was not in her best interest to be returned to Guatemala or to be reunited with her mother. Based on these findings, Yosila filed for benefits under the SIJS program using a Form I-360. On March 28, 2017, USCIS approved her application. As a SIJS-parolee, Yosila then applied for her EAD along with proof that her I-360 Petition was approved. The EAD application was denied on April 8, 2020 based on USCIS's determination that Yosila could not prove she was a parolee and therefore was ineligible for the benefit as a public interest parolee. USCIS' arbitrary denial, which is contrary to law, has left Yosila without the ability to obtain her driver's license or social security card. She is also unable to seek employment or continue her education. As a result, Yosila's dream of becoming a doctor remains unfulfilled.

13. Plaintiff, Oscar Velasquez Esteban ('Oscar") and Plaintiff, N.V.E. are brothers. Oscar who was born in September 2001, and is a citizen and national of Guatemala. Oscar is currently 18 years old. Prior to coming to the U.S. at the age of 13, Oscar lived with his grandmother because Oscar's mother refused to provide for him financially, physically, or emotionally. His mother failed to ensure his well-being and safety by failing to provide food, clothing or shelter. After his grandmother became too old to care for him, Oscar left Guatemala to seek out his father in the U.S. There was no one to take care of him in

6

Guatemala or protect him from the growing violence. Unbeknownst to his father, Oscar took the decision to make the long and dangerous journey to the U.S. along with his brother N.V.E. who was 11 at the time. Once here, Oscar and N.V.E. were initially apprehended by Customs and Border Protection and placed in the custody of the Office of Refugee Resettlement ("ORR"), the Agency in charge of unaccompanied juvenile immigrants. After a few months in ORR custody, the Agency was able to locate the children's father and they were released to him. Subsequently, given his mother's abuse, neglect and abandonment, a state court Judge specifically determined that it was not in Oscar's best interest to be returned to Guatemala or to be reunited with his mother. Oscar's father was granted sole custody of Oscar and N.V.E. Based on these findings, Oscar filed for benefits under the SIJS program using Form I-360. On February 8, 2017, USCIS approved Oscar's application. As a SIJS-parolee, Oscar then applied for his EAD, along with proof that his I-360 Petition had been approved. The EAD application was denied on October 11, 2018, based on USCIS' determination that Oscar could not prove he was a parolee and therefore was ineligible for the benefit as a public interest parolee. USCIS' arbitrary denial, which is contrary to law, has left Oscar without the ability to obtain his driver's license or social security card. Oscar, who graduated high school this year, is unable to seek employment or continue his education. Oscar wants to join the military, specifically the Marines, but his dream of serving this country also remains on hold.

  14. Plaintiff, N.V.E. ('N.V.E.") and Oscar are brothers. N.V.E. who was born in December 2003, is a citizen and national of Guatemala. He is currently 16 years old and brings this action by his parent and next friend Oscar Omar Velasquez, in accordance with Federal Rule of Civil Procedure 17(c). Prior to coming to the U.S. at the age of 11, N.V.E.

7

lived with his grandmother because N.V.E.'s mother refused to provide for him financially, physically, or emotionally. N.V.E.'s natural mother failed to ensure his well-being and safety by failing to provide food, clothing or shelter. After his grandmother became too old to care for him, N.V.E. left Guatemala, to seek out his father in the U.S. There was no one to take care of him in Guatemala or protect him from the growing violence. N.V.E., unknown to his father, made the long and dangerous journey to the U.S. along with his brother, Oscar who was 13 at the time. Once here, he was initially apprehended, with his brother, by Customs and Border Patrol and placed in the custody of the ORR. After a few months in ORR custody, the Agency was able to locate the children's father and they were released to him. Subsequently, given his mother's abuse, neglect and abandonment, a state court Judge specifically determined that it was not in N.V.E.'s best interest to be returned to Guatemala or to be reunited with his mother. Based on these finding, N.V.E. filed for benefits under the SIJS program using Form I-360. On February 8, 2017, USCIS approved his application. As a SIJS-parolee, N.V.E. then applied for his EAD, along with his proof that his I-360 Petition had been approved. The EAD was denied on October 11, 2018, based on USCIS' determination that N.V.E. could not prove he was a parolee and therefore was ineligible for the benefit as a public interest parolee. USCIS' arbitrary denial, which is contrary to law, has left N.V.E. without the ability to obtain his driver's license or social security card. He is also unable to seek employment. Additionally, N.V.E. will be a junior in high school in the Fall and is eager to take college classes which he cannot take because of a lack of social security number.

**Defendants:**

    15.    Defendant Department of Homeland Security ("DHS") is a cabinet

department of the United States federal government overseeing many immigration- based component parts, such as USCIS, Immigration and Customs Enforcement, and Customs and Border Protection.

16. Defendant USCIS is a component agency of DHS and shares responsibility for the implementation of the Immigration and Nationality Act ("INA") and other immigration-related laws of the United States. USCIS is specifically tasked with the adjudication of immigration benefits, which includes the processing of employment-based and family-based immigrant and nonimmigrant petitions, applications for asylum, applications for naturalization, and applications for employment authorization associated with applications.

## LEGAL BACKGROUND

17. Congress first recognized SIJS as a form of immigration relief in 1990. Specifically, the Immigration and Nationality Act of 1990 conferred "special immigrant status" to immigrants "declared dependent on a juvenile court located in the United States and . . . deemed eligible by that court for long-term foster care, and . . . it would not be in the alien's best interest to be returned to the alien's or parent's previous country of nationality . . . ." Pub. L. No. 101-649 § 153, 104 Stat. 4978 (1990) (amending 8 U.S.C. § 1101).

18. The implementing regulations enacted by legacy United States Immigration and Naturalization Service ("INS") in 1993 defined a "juvenile court" as "a court located in the United States having jurisdiction under state law to make judicial determinations about the custody and care of juveniles." 8 C.F.R. § 101.6(a) (1993). The regulations left the determination of whether an immigrant was an eligible juvenile within the meaning of the

9

SIJS statute to state law. 8 C.F.R. § 101.6(c)(1) (1993).

19. In 2008, Congress passed the Trafficking Victims Protection Reauthorization Act ("TVPRA"), amending the SIJS statute. *See* Pub. L. No. 110- 457 § 235(d), 122 Stat. 5044 (2008). As part of the relevant amendment, Congress required a state court to make a determination if the immigrant seeking SIJS could or could not be "reunifi[ed] with 1 or both of [her] parents . . . due to abuse, neglect, abandonment, or a similar basis found under state law." *Id.* § 235(d)(1)(A).

20. Additionally, the TVPRA added an age-out provision, which provided that the applicant's eligibility for SIJS was dependent on the applicant's age at the time he or she applied for SIJS. *Id.* § 235(d)(6).

21. SIJS eligibility requires a noncitizen child to be under 21 at the time the I-360 is filed and to be unmarried. It also requires that the noncitizen (i) "has been declared dependent on a juvenile court located in the United States or whom such a court has legally committed to, or placed under the custody of, an agency or department of a State, or an individual or entity appointed by a State or juvenile court located in the United States, and whose reunification with 1 or both of the immigrant's parents is not viable due to abuse, neglect, abandonment, or a similar basis found under State law; (ii) for whom it has been determined in administrative or judicial proceedings that it would not be in the alien's best interest to be returned to the alien's or parent's previous country of nationality or country of last habitual residence; and (iii) in whose case the Secretary of Homeland Security consents to the grant of special immigrant juvenile status . . . ." 8 U.S.C. § 1101(a)(27)(J).

22. While an individual may be eligible for SIJS benefits even where

10

reunification with just one parent due to abuse, neglect, abandonment is not possible, no natural parent or prior adoptive of a child who receives SIJS may receive immigration status through the child. 8 USC § 1101(a)927)(J)(iii)(II).

23. Once granted, SIJS may not be revoked except "on notice," 8 C.F.R. § 205.2, and upon the Government's compliance with a series of procedural safeguards: The Secretary of Homeland Security must find "good and sufficient cause" for revocation; the agency must provide notice of intent to revoke; and the SIJ designee must be given the opportunity to present evidence opposing revocation". 8 U.S.C. § 1155; 8 C.F.R. § 205.2; *see also* 7 USCIS Policy Manual, pt. F, ch. 7 (Mar. 21, 2018); *Osorio-Martinez v. Attorney Gen. U.S.*, 893 F.3d 153, 163-64 (3d Cir. 2018).

24. In addition, SIJS also provides a pathway to lawful permanent residency and, ultimately, citizenship. *See* 8 U.S.C. §§ 1255, 1427. This program encapsulates Congress' intent to permanently protect immigrant juveniles who cannot reunify with one or both parents because of abuse, neglect, abandonment, or for some similar reason, and whose return to their home country would be contrary to their best interests. Pub. L. No. 110-457, § 235, 122 Stat. 5044, 5079 (2008).

25. An individual with an approved SIJS Petition is thus deemed to "have been paroled" into the United States. *See* 8 USC § 1255(h); 8 C.F.R § 245.1(a); *See also Garcia v. Holder*, 659 F.3d 1261, 1272 (9th Circuit 2011). USCIS recognizes that a "parolee is an individual who is paroled into the United States[3]."

26. Parolees are eligible for employment authorization. *See* 8 C.F.R. §

---

[3] https://www.uscis.gov/humanitarian/humanitarian-or-significant-public-benefit-parole-individuals-outside-united-states#:~:text=Parolee%3A%20A%20parolee%20is%20an,paroled%20into%20the%20United%20States.

274a.12(c)(11).

27. Logically, a SIJS-parolee remains in such status until either the status is revoked, or the SIJS-parolee has obtained their lawful permanent residency. Thus, once an individual's I-360 Petition is granted, they become a SIJS-parolee, and eligible for employment authorization on that basis. This result conforms with Congress' overarching goal to protect immigrant children who have been abused, neglected, or abandoned from further harm. It also allows such children to continue their education and seek employment while they await the availability of an immigrant visa so that they may ultimately obtain their permanent residency.

## STATEMENT OF CLAIMS

### Count One:
***(Violation of the APA— Arbitrary and Capricious, Abuse of Discretion, Not in Accordance with Law)***

28. Plaintiffs incorporate by reference each of the allegations in paragraphs 1 through 27.

29. The APA entitles "a person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action . . . to judicial review thereof." 5 U.S. Code § 702.

30. The Agency's conduct in not recognizing individuals with approved I-360 Petitions as SIJS-parolees despite the plain language of the statute is arbitrary and capricious, constituted an abuse of discretion, and is otherwise not in accordance with law. Insofar as the Agency ignored the legal classification of a SIJS-parolee and instead demanded independent documentation as exclusive proof of parolee status from Plaintiffs' to support their legal classification, the Agency has ignored the plain language

of the law.

31. Furthermore, the Agency's failure to recognize Plaintiffs as SIJS-parolees for purposes of EAD eligibility is likewise contrary to law. *See* 8 C.F.R. §274a.12(c)(11); 8 U.S.C. § 1255(h).

32. Under the APA, this Court has authority to "hold unlawful and set aside agency action, findings, and conclusions found to be arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). Plaintiffs are therefore entitled to the relief requested.

**Count Two:**
***(Violation of the APA— Contrary to constitutional right)***

33. Plaintiffs incorporate by reference each of the allegations in paragraphs 1 through 32.

34. USCIS' denial of Plaintiffs' work authorization notwithstanding their classification as SIJS-parolees impermissibly interferes with their ability to gain employment, pursue a chosen profession, or obtain private employment. *See* *McNary v. Haitian Refugee Ctr., Inc*., 498 U.S. 479 (1991).

35. "The right to hold specific private employment and to follow a chosen profession free from unreasonable governmental interference comes within the 'liberty' and 'property'" interests protected by the Fifth Amendment. *Greene v. McElroy*, 360 U.S. 474 (1959); *see also*, *Abdelfattah v. U.S. Dep't of Homeland Sec.*, 787 F.3d 524, 538 (D.C. Cir. 2015).

36. When the government formally prohibits an individual from certain work or implements broadly preclusive criteria that prevent pursuit of a chosen career, there is a

cognizable "deprivation of liberty that triggers the procedural guarantees of the Due Process Clause." *Trifax Corp. v. Dist. of Columbia,* 314 F.3d 641, 643–44 (D.C. Cir. 2003).

37. The APA empowers this Court to set aside a final agency action where, as here, the agency action is contrary to a constitutional right, power, privilege, or immunity. *See* 5 U.S.C. §706(2)(B).

PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that this Court grant the following relief:

A. Assume jurisdiction over this matter;

B. Declare that Plaintiffs are SIJS-parolees as a result of USCIS's grant of their I-360 Petitions and USCIS's finding otherwise is arbitrary and capricious, an abuse of discretion, and not in accordance with law;

C. Declare that USCIS's denial of Plaintiffs' EADs interferes with their ability to gain employment, pursue a chosen profession, or obtain private employment and thus is unlawful;

D. Order USCIS to re-open Plaintiffs' denied EAD applications and treat them as having been filed by SIJS-parolees and adjudicate said applications consistent with the statute and regulations;

E. Award attorneys' fees, costs, and interest under the Equal Access to Justice Act or as otherwise permitted by law; and

F. Grant such further and other relief as may be just and proper.

Respectfully submitted this 7th day of July, 2020

*/s/Rekha Sharma-Crawford*
Rekha Sharma-Crawford, Bar ID: MO0018
Sharma-Crawford Attorneys at Law
515 Avenida Cesar E. Chavez
Kansas City, MO 64108
Phone 816 994 2300

<div style="text-align: right">
Fax 816 994 2310
Rekha@Sharma-Crawford.com
</div>

**<u>CERTIFICATE OF COMPLIANCE</u>**

Under Federal Rule of Civil Procedure 11, by signing below, I certify to the best of my knowledge, information, and belief that this complaint: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Rule 11.

Respectfully submitted this 7th day of July, 2020

<div style="margin-left: 50%">

*/s/Rekha Sharma-Crawford*
Rekha Sharma-Crawford, Bar ID: MO0018
Sharma-Crawford Attorneys at Law
515 Avenida Cesar E. Chavez
Kansas City, MO 64108
Phone 816 994 2300
Fax 816 994 2310
Rekha@Sharma-Crawford.com

</div>